UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVEN   STRONG   and   JANET §
STRONG, §
§
　　Plaintiffs, §
§
v. §   CIVIL ACTION NO. 3:14-CV-1027-B
§
GREEN TREE SERVICING, LLC, §
§
　　Defendant. §

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) Defendant's Motion for Final Summary Judgment or Alternative

Motion for Partial Summary Judgment (Doc. 73), and (2) Plaintiffs' Motion to Strike (Doc. 106).

For the reasons that follow, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Defendant's

Motion.

## I.

## BACKGROUND[1]

This case is a mortgage servicing dispute between Plaintiffs Steven and Janet Strong (the

"Strongs") and their mortgage servicer, Defendant Green Tree Servicing, LLC ("Green Tree").[2] The

Strongs own real property at 5509 Northmoor Drive, Dallas, Texas 75230, which is subject to a

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a party's contention, these facts are undisputed.

[2] Green Tree states in its pleadings that it is now known as Ditech Financial LLC. *See. e.g.*, Doc. 73, Def.'s Mot. for Final Summ. J. 1. But no party "has moved to change the name of this party or to amend the caption of the case," and "[c]ourts typically do not make such changes *sua sponte.*" *Reynolds v. Brown & Root, Inc.*, No. 1:03-CV-545, 2004 WL 3733401, at *4 n.3 (E.D. Tex. Dec. 20, 2004). Therefore, the Court will refer to Green Tree by the name that appears in the caption.

mortgage secured by a promissory note (the "Note") and Deed of Trust that Steven Strong ("Steven") executed in 2004. Doc. 1-8, First Am. Original Pet. ¶ 10; Doc. 75-1, Def.'s App. 1–4, Note; Doc. 75-2, Def.'s App. 5–17, Deed of Trust. Green Tree currently services that mortgage. Doc. 1-8, First Am. Original Pet. ¶ 12; Doc. 75-4, Def.'s App. 51–56, Notice of Transfer; *see also* Doc. 93-1, Pls.' App. 22, Aff. of Steven Strong ¶ 23 [hereinafter "Strong Aff."]. In 2012, the Strongs fell behind on their mortgage payments and began coordinating with Bank of America ("BOA"), which was servicing their mortgage at the time, to cure their default and "explor[e] options to move to a fixed rate note." Doc. 93-1, Pls.' App. 18, Strong Aff. ¶ 7; *see also* Doc. 1-8, First Am. Original Pet. ¶ 13. At some point during modification negotiations, BOA transferred servicing to Green Tree. Doc. 75-4, Def.'s App. 51–56, Notice of Transfer; Doc. 93-1, Pls.' App. 22, Strong Aff. ¶ 23. According to Green Tree's records, the Strongs owed $234,852.83 on their mortgage as of September 15, 2012, a figure that the Strongs argue is inaccurate. Doc. 75-4, Def.'s App. 57, Fair Debt Letter; Doc. 93-1, Pls.' App. 22–23, Strong Aff. ¶ 26; *see also* Doc. 75-4, Def.'s App. 59, Debt Dispute Letter.

Before BOA transferred servicing to Green Tree, the Strongs applied for a mortgage modification  under the Home Affordable Modification Program (HAMP). Doc. 75-3, Def.'s App. 26–43, Loan Modification Application Letter; Doc. 93-1, Pls.' App. 22, Strong Aff. ¶ 22.[3] Once Green Tree took over, however, it requested that the Strongs begin the application process anew, starting with a phone survey. Doc. 93-1, Pls.' App. 24, Strong Aff. ¶ 29. It was during this time, Steven alleges, that Green Tree's employees made false statements about whether Green Tree

---

[3] Two paragraph 22s appear in the Strong Affidavit. This citation refers to the second.

possessed the Strongs' original HAMP application to BOA. *Id.* at 23, Strong Aff. ¶ 28. He also states that, on October 30, 2012, an employee told him that "a modification [was] the best option for [him]." *Id.* at 24, Strong Aff. ¶ 29. He took this to mean that a modification "would be[] actually and definitively available" if he took the survey.[4] *Id.* On the same date, a different Green Tree employee indicated that the past-due amount on his mortgage was $12,954.86. *Id.* ¶ 30.

In November 2012, Steven mailed a qualified written request ("QWR") to Green Tree, expressing concerns about how it was handling his mortgage. Doc. 75-5, Def.'s App. 61–67, QWR. Around the same time, Green Tree sent the Strongs a Notice of Default based on their failure to make monthly payments since June 2012.[5] Doc. 75-5, Def.'s App. 68–69, Notice of Default. According to the Notice, the Strongs owed $15,622.41 in past-due payments, though they also dispute that figure's accuracy. *Id.* at 68; *see also* Doc. 93-1, Pls.' App. 25, Strong Aff. ¶ 31 (recounting conversation with a Green Tree employee on November 12, 2012, where the employee stated that the Strongs' past-due amount was $15,662.41). The Notice also said that Strongs could cure this default "by sending the total amount of $15,622.41 or . . . by completing a modification or repayment agreement arranged through Green Tree by contacting the Collection Department." Doc. 75-5, Def.'s App. 68, Notice of Default. Near the end of the month, Green Tree responded to Steven's QWR, stating, *inter alia*, that it had taken over servicing on November 1, 2011, and could only provide servicing information from that date forward. Doc. 75-5, Def.'s App. 70, Resp. to QWR. The response included a table explaining how Green Tree calculated the Strongs' past-due amounts, as

---

[4] According to Steven, Green Tree represented that it offered modifications "at least 10–15 times." Doc. 93-1, Pls.' App. 24, Strong Aff. ¶ 29.

[5] BOA had previously sent the Strongs a Notice of Default in July 2012. Doc. 75-2, Def.'s App. 22–25, Notice of Default.

well.[6] *Id.* at 71.

In December 2012, Steven again contacted Green Tree, which told him that the past-due amount was now $18,289.96.[7] Doc. 93-1, Pls.' App. 26, Strong Aff. ¶ 37. So, at Green Tree's urging, Steven took the phone survey on December 18, 2012, to begin the modification application process. *Id.* at 27, Strong Aff. ¶ 38. According to Steven, the survey included the following questions, among others:

- What is the name of your company?
- How often do you get paid?
- What day do you get paid?
- What is your average bring home pay after taxes per month?

Doc. 93-2, Pls.' App. 38–39, Strong Aff. ¶ 66. The next day, Green Tree denied the Strongs' application based on an internal policy to deny modifications for home equity loans—like the Strongs'—because of restrictions contained in the Texas state constitution.[8] Doc. 75-6, Def.'s App. 80–82, HAMP Denial Letter; Doc. 93-1, Pls.' App. 28, Strong Aff. ¶ 40; Doc. 93-5, Pls.' App. 83, Dep. of Wayne Reyes 169:12–16 [hereinafter "Reyes Dep."]. Green Tree's system was set up in such a way, though, that its representatives would not know that modification was not an option

---

[6] According to the table, the Strongs owed $2,539.92 per month from June to August 2012, and $2,667.55 per month from September to December 2012. Doc. 75-5, Def.'s App. 71, Resp. to QWR. These charges align with the past-due amounts that Green Tree communicated to the Strongs ($12,954.86 in October 2012 plus $2,667.55 equals $15,662.41—the November past-due amount).

[7] Consistent with another $2,667.55 increase. At the end of December, however, Steven again called Green Tree and was told that the past-due amount was $18,365.95. Doc. 93-2, Pls.' App. 30, Strong Aff. ¶ 43.

[8] Steven alleges that the denial letter suggested that the Strongs "re-apply," despite their ineligibility. Doc. 93-2, Pls.' App. 28, Strong Aff. ¶ 40. While the letter informed the Strongs that other options might be available, nowhere did it suggest that they reapply for a modification under the HAMP. Doc. 75-6, Def.'s App. 80–82, HAMP Denial Letter.

until after the mortgagor took the phone survey. Doc. 93-5, Pls.' App. 88, Reyes Dep. 187:8–16. The Strongs appealed the denial, arguing that the Texas constitution did not prevent them from obtaining a HAMP modification. Doc. 75-6, Def.'s App. 83–85, HAMP Appeal; Doc. 75-7, Def.'s App. 87–91, Supplement to HAMP Appeal. But Green Tree upheld the denial based on its original reading of the Texas constitution.[9] Doc. 75-7, Def.'s App. 86, Resp. to HAMP Appeal; *Id.* at 92–93, HAMP Appeal Explanation Letter.

While the modification discussions were ongoing, the Strongs' account balance continued to increase. Steven alleges that he offered to make monthly payments in the amount he believed to be correct—$1,518.80—but Green Tree rebuffed him, telling him that it would not accept that amount. Doc. 93-2, Pls.' App. 29–30, Strong Aff. ¶ 42. By January 2013, the Strongs' statement showed that they owed $23,701.57; in February, the amount due was $26,445.63.[10] *Id.* at 30, Strong Aff. ¶¶ 42, 46. Moreover, the February statement indicated that the monthly payment amount was $1,518.80.[11] *Id.* ¶ 46. Green Tree reiterated this amount in a May 2013 letter to the Strongs. *Id.* at 31, Strong Aff. ¶ 48. So in June, the Strongs made a monthly payment in that amount, and Green Tree accepted and deposited it. *Id.* ¶ 49. When Steven called Green Tree on the day he sent the payment, a representative stated that the amount past due was $34,829.69. *Id.* at 31–32, Strong Aff.

---

[9] Steven alleges that "[a]t all times relevant, . . . [Green Tree] told [the Strongs] . . . that [their] account was eligible for modification, when in fact . . . [Green Tree] was going to . . . not offer modification." Doc. 93-2, Pls.' App. 34–35, Strong Aff. ¶ 59. But the only communication after the initial denial and appeal that could even be considered a modification offer occurred in July 2013, when Green Tree allegedly sent the Strongs a letter with a blank copy of a 2012 HAMP application. *Id.* at 33, Strong Aff. ¶ 53. Then in September 2013, Green Tree allegedly sent them another letter reiterating their ineligibility. *Id.* at 34, Strong Aff. ¶ 54.

[10] Neither figure is consistent with a $2,667.55 increase over the previous month's past-due amount.

[11] No party has submitted evidence to explain this change.

¶ 50. This amount increased to $50,837.89 in November and ultimately to $79,887.59 in January 2015.[12] *Id.* at 34, Strong Aff. ¶¶ 56, 58.

The Strongs originally filed this case in the 44th Judicial District Court of Dallas County, Texas, on November 27, 2013, claiming that Green Tree and BOA[13] violated three provisions of the Texas Fair Debt Collection Practices Act (TDCA), Tex. Fin. Code §§ 392.001–.404, by misrepresenting the availability of a HAMP modification. *See* Doc. 1-2, Original Pet. ¶¶ 10–22; Doc. 1-8, First Am. Original Pet. ¶¶ 10–22. They seek (1) actual damages for Green Tree's TDCA violations; (2) mental anguish damages; (3) an injunction requiring Green Tree to modify their mortgage, so as to prevent future TDCA violations; and (4) attorney's fees and court costs. Doc. 1-8, First Am. Original Pet. 5–6. After Green Tree removed the case to this Court, *see* Doc. 1, Notice of Removal, the parties voluntarily abated proceedings pending the outcome of *Sims v. Carrington Mortgage Services, L.L.C.*, 440 S.W.3d 10 (Tex. 2014). Doc. 11, Order. In *Sims*, the Texas Supreme Court held that certain methods of restructuring home equity loans do not have to comply with the Texas constitution, contrary to what Green Tree had believed. 440 S.W.3d at 17. As a result, the Strongs were, in fact, eligible for a HAMP modification, and in August 2014, they entered into a trial modification with Green Tree. Doc. 75-7, Def.'s App. 94–98, Trial Modification. Green Tree and the Strongs then negotiated a permanent modification, which took effect on January 1, 2015. Doc. 75-8, Def.'s App. 99–117, Permanent Modification Letter; Doc. 75-8, Def.'s App. 118–27, Modification Agreement; Doc. 93-2, Pls.' App. 37, Strong Aff. ¶ 62.

---

[12] The Court is not sure what to make of this date, since the Strongs and Green Tree had entered into a permanent modification agreement by January 2015. Doc. 75-8, Def.'s App. 118–27. Without further explanation from the parties, though, the Court will simply take the statement at face value.

[13] Since dismissed from this case. Doc. 72, Order of Dismissal with Prejudice.

- 6 -

Green Tree now seeks summary judgment on the Strongs' claims. Doc. 73, Def.'s Mot. for Final Summ. J. or Alternative Mot. for Partial Summ. J. [hereinafter "Def.'s MSJ"]. The Strongs responded, and Green Tree replied. Doc. 88, Pls.' Resp.; Doc. 97, Def.'s Reply. In their Response, the Strongs moved to strike Green Tree's summary judgment appendix because it violated the Local Rules. Doc. 88, Pls.' Resp. ¶ 18. Green Tree pointed out that the Strongs' motion to strike itself did not comply with the Local Rules, either. Doc. 96, Def.'s Obj. & Resp. in Opp. The Strongs then filed an Amended Response, which cured the defects identified by Green Tree, and Green Tree followed up with an Amended Reply.[14] Doc. 106, Pls.' Am. Resp.; Doc. 107, Def.'s Reply to Pls.' Am. Resp. [hereinafter "Def.'s Am. Reply"]. Thus, both motions are ready for review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence, taken as a whole, show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer*

---

[14] The Court denied the Strongs' Motion to Strike Green Tree's Amended Reply because the Amended Reply was substantially similar to the original one. Doc. 114, Elec. Order.

*v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). To meet this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted). Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (internal citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A non-movant may not simply rely on the Court to sift through the summary judgment record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Thus, the non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The Court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confines its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

## III.

## ANALYSIS

There are two motions before the Court: Green Tree's Motion for Final Summary Judgment ("MSJ") and the Strongs' Motion to Strike ("MTS"). Because a decision on the Strongs' motion will

determine what evidence the Court may consider in deciding the summary judgment motion, the Court will address the Motion to Strike first.

A.     *Motion to Strike*

In the MTS, the Strongs ask the Court to strike Green Tree's MSJ, accompanying brief, and appendix in support for failing to comply with the Local Rules. First, the Strongs argue that neither the MSJ itself nor the brief contains a summary that identifies the elements of the claims as to which Green Tree seeks summary judgment, in violation of Local Rule 56.3. Doc. 89, Pls.' Br. in Supp. of Resp. ¶ 45. Second, they point out that, after Green Tree filed its appendix, it filed an additional affidavit, which it designated as a "Supplemental Document" on the Court's electronic case filing system. *Id.* ¶ 46. This filing, they allege, violates Local Rule 56.7. *Id.* And because the late-filed affidavit authenticates the evidence in the rest of the appendix, the Strongs argue that the Court must strike the appendix, too. *Id.* ¶ 47.

The Court is not persuaded. First, as to the late-filed affidavit, the Court's records reveal that it was filed only six minutes after the appendix. Moreover, the appendix's table of contents referenced the affidavit as "Exhibit A." Doc. 75, Def.'s App. 1; Doc. 76, Aff. of Wayne D. Reyes. By all indications, then, the omission was a mistake that Green Tree corrected immediately. The Strongs cannot seriously argue that the six-minute delay in filing an exhibit referred to in the appendix prejudiced their ability to respond to Green Tree's arguments and evidence. Striking the affidavit here would be a hyper-technical exaltation of form over substance. It would also be inconsistent with the purpose of Local Rule 56.7, which was meant to "address[] the former practice of filing supplemental materials, without leave of court, at any time while the motion was pending." *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06 CV 0073, 2007 WL 1969752, at *2

(N.D. Tex. June 27, 2007) (Fitzwater, J.). "Such filings often prompted requests . . . to respond to the new materials, thereby delaying a decision based on a supplemental filing (and response) that may have had no bearing on the court's ruling, or that otherwise created uncertainty about whether the summary judgment motion was ripe for a decision." *Id.* Green Tree's "Supplemental Document" created no such uncertainty—it was filed the very same day as the appendix, thereby allowing the Strongs a full period of time to respond to it without delaying adjudication of the MSJ.[15] Accordingly, the Court denies the Strongs' Motion to Strike as it pertains to the affidavit and the appendix.

Regarding the MSJ and accompanying brief, Local Rule 56.3 requires that a party moving for summary judgment provide a summary that "state[s] concisely the elements of each claim or defense as to which summary judgment is sought." N.D. Tex. Civ. R. 56.3(a). Here, Green Tree stated in its brief that it sought summary judgment "as to all causes of action set forth" in the First Amended Original Petition, and later listed the elements of each claim. Doc. 74, Def.'s Br. in Supp. of MSJ 1, 10 [hereinafter "Def.'s MSJ Br."]. Local Rule 56.3(b) permits a party to provide this information anywhere in its brief, as long as the party indicates in its motion that it is putting the necessary information in its brief. N.D. Tex. Civ. R. 56.3(b). Green Tree did not include this notice, but striking the entire MSJ and brief for this omission would be overkill. More importantly, it would violate Federal Rule of Civil Procedure 83(a)(2), which requires that a "local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). Green Tree has a "right to have [its] motion for summary judgment adjudicated on the merits," and striking the MSJ would cost it that right.

---

[15] In fact, the Court granted the Strongs nearly an extra month to file their Response to the MSJ. Doc. 80, Elec. Order (extending response deadline from December 15, 2015, to January 4, 2016).

*Hanks v. Shinseki*, No. 3:08-1594, 2010 WL 3000835, at *3 (N.D. Tex. July 28, 2010). Accordingly, the Court can only strike the MSJ under Local Rule 56.3 if Green Tree's non-compliance was willful. There is no evidence that it was, so the Court denies the Strongs' Motion to Strike as to Green Tree's MSJ and brief, as well.

B.      *Motion for Summary Judgment*

The Court turns now to the merits of Green Tree's MSJ. The Strongs allege that Green Tree violated three TDCA provisions during negotiations for a HAMP modification by (1) "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding," Tex. Fin. Code § 392.304(a)(8); (2) "representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business," Tex. Fin. Code § 392.304(a)(14); and (3) "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer," Tex. Fin. Code § 392.304(a)(19). Doc. 1-8, First Am. Original Pet. ¶ 21. Green Tree offers six reasons why the Court should grant summary judgment on all of the Strongs' claims: (1) the statute of frauds bars the claims; (2) the economic loss doctrine bars the claims; (3) loan modification discussions are not "debt collection" under the TDCA; (4) the Modification Agreement operates as an accord and satisfaction and moots the claims; (5) the summary judgment evidence proves that Green Tree did not make any misrepresentations; and (6) the Strongs cannot show that they are entitled to mental anguish damages. Doc. 74, Def.'s MSJ Br. ¶¶ 43–58. The Court will address these arguments individually.

1.      Statute of Frauds

Green Tree first argues that Texas's statute of frauds, which permits enforcement of certain contracts only when they are in writing, precludes the Strongs' claims, which are based on oral

negotiations concerning a loan modification. *Id.* ¶¶ 43–45. The Strongs, on the other hand, believe that the "statute of frauds . . . is completely inapplicable to the facts and claims of this case." Doc. 89, Pls.' Resp. Br. 22.[16] Under Texas law, "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code § 26.02(b). This provision also covers modifications of loans within the statute of frauds's ambit.[17] *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013).

This Court has previously found that the statute "may act to bar certain claims of misrepresentation under the TDCA." *Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 794 (N.D. Tex. 2013). In *Kruse*, the plaintiffs complained that their mortgage servicer had violated an oral agreement to postpone foreclosure, despite the plaintiffs' default. *Id.* This oral agreement, however, was a modification of one of the loan's terms, which otherwise allowed the mortgagee to foreclose in the event the borrower defaulted. *Id.* at 794 & n.3. The oral modification was thus subject to the statute of frauds and had to be in writing to be enforceable. *Id.* at 794. Because the plaintiffs' TDCA claims were based on this unenforceable modification, the statute of frauds barred them. *Id.* at 795. Other courts have reached the same conclusion in similar situations. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014) (unpublished) (per curiam) (affirming dismissal of TDCA claims where plaintiffs did not allege "any other factual misrepresentation independent of the oral loan modification which [the court had] already

---

[16] Although the Strongs filed an Amended Response, they did not file a separate brief in support. Thus, the Court infers that they are relying upon their original response brief.

[17] The parties do not dispute that the Strongs' mortgage exceeds the requisite amount, and is thus subject to the statute of frauds.

determined to be barred by the statute of frauds"); *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81,

2015 WL 1939438, at *3 (E.D. Tex. Apr. 29, 2015) (granting summary judgment to mortgagee on

TDCA claims where plaintiffs did not "offer[] any evidence independent of the alleged oral promise

to demonstrate [the defendant's] misrepresentation").

This principle—that the statute of frauds bars TDCA claims based on unenforceable oral

modifications or promises to modify—does not help Green Tree in this case. Here, the Strongs have

not alleged that there was an oral modification, or even that Green Tree promised to modify their

mortgage. Rather, they allege that Green Tree falsely represented that a modification might be an

available option, when in fact it was not. *See* Doc. 1-8, First Am. Original Pet. ¶¶ 16–18. That is,

they contend that Green Tree was never even going to *offer* a modification, orally or otherwise, let

alone actually agree to one. Their TDCA claims therefore do not rest on an oral modification or

promise to modify, meaning that the statute of frauds does not bar them.

### 2.    Economic Loss Doctrine

Next, Green Tree argues that the economic loss doctrine bars the Strongs' claims because

they are purportedly based on a breach of a contractual duty. Doc. 74, Def.'s MSJ Br. ¶¶ 46–48. The

Strongs assert that the doctrine, like the statute of frauds, does not apply in this case. Doc. 89, Pls.'

Resp. Br. ¶ 49. "The economic loss doctrine 'holds that if the defendant's conduct would give rise

to liability only because it breaches the parties' agreement, the plaintiff's cause of action sounds only

in contract.'" *Birchler*, 2015 WL 1939438, at *4. Conversely, if the defendant breaches "an

independent legal duty, separate from the existence of the contract itself," the doctrine does not

apply. *Thawar v. 7-Eleven, Inc.*, No. 3:15-CV-2675, 2016 WL 775848, at *5 (N.D. Tex. Feb. 29,

2016) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47

(Tex. 1998)).

The Fifth Circuit has held that the economic loss doctrine does not bar all TDCA claims. *McCaig v. Wells Fargo Bank, N.A.*, 788 F.3d 463, 474–75 (5th Cir. 2015). Green Tree tries to distinguish *McCaig* by pointing out three factual distinctions between that case and this one: first, the McCaigs were not themselves obligated on the loan at issue, whereas the Strongs are; second, the McCaigs had entered into a forbearance agreement to stave off foreclosure, while the Strongs' allegations pertain to the availability of a modification; and third, this case lacks the evidence of servicing mistakes present in *McCaig*. Doc. 107, Def.'s Reply ¶¶ 18–19. But these facts had no bearing on the Fifth Circuit's decision that the economic loss doctrine did not apply to the McCaig's TDCA claims. Rather, the court relied on the general rule that, "if a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *McCaig*, 788 F.3d at 475. Here, Green Tree had a statutory duty not to misrepresent its services or the character of the Strongs' debt, or to otherwise engage in deceptive collection practices. Tex. Fin. Code § 392.304(a)(8), (14), (19). Thus, even if Green Tree's alleged conduct also breached a contractual duty, the economic loss doctrine would not bar the Strongs' claims. So this argument also fails.

3.     The Loan Modification Discussions with Green Tree Were Not "Debt Collection"

Green Tree's third argument is that discussions about loan modifications do not qualify as "debt collection" for purposes of the TDCA, and therefore the conduct the Strongs complain of cannot form the basis for liability under that statute. Doc. 74, Def.'s MSJ Br. ¶¶ 49–51. The Strongs contend that Green Tree waived this argument by failing to plead it as an affirmative defense. Doc. 89, Pls.' Resp. Br. ¶ 50. Alternatively, they argue that, contrary to Green Tree's assertions, loan

modification discussions can constitute "debt collection" in certain circumstances. *Id.* As explained below, the Court concludes that (1) Green Tree is not precluded from raising this argument, and (2) its actions in this case did not constitute "debt collection," meaning that the Strongs cannot prevail on two of their claims.

> i.      Did Green Tree fail to raise its argument as an affirmative defense?

The first question before the Court is whether Green Tree can even argue for summary judgment on this basis. The Strongs say that it cannot, because it did not raise it as an affirmative defense in its initial pleading as required by Texas Rule of Civil Procedure 94. *Id.* Green Tree, on the other hand, both denies that this argument constitutes an affirmative defense, and argues that it raised the issue in a timely manner. Doc. 107, Def.'s Am. Reply ¶ 20. Green Tree is correct on both grounds.

> a.      Green Tree's Argument is Not an Affirmative Defense or Avoidance

Under Texas Rule of Civil Procedure 94, a party must raise "any . . . matter constituting an avoidance or affirmative defense" in its responsive pleading. Tex. R. Civ. P. 94. "An affirmative defense allows the defendant to introduce evidence to establish an *independent reason* why the plaintiff should not prevail; it does not rebut the factual proposition of the plaintiff's pleading." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 411 (5th Cir. 2009) (quoting *Hassell Constr. Co., Inc. v. Stature Commercial Co., Inc.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.)); *see also Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996) ("An affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish an independent reason why the plaintiff should not recover." (citation and internal quotation marks omitted)). An "avoidance" is "closely related" to an affirmative defense, and occurs when "a

defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015) (quoting *Confession and Avoidance*, Black's Law Dictionary (10th ed. 2009)). Although "the modern legal lexicon has muddled the distinction" between the two, the "hallmark characteristic of both categories of defenses is that the burden of proof is on the defendant to present sufficient evidence to establish the defense and obtain the requisite jury findings." *Id.*

Here, Green Tree's argument—that its conduct was not "debt collection"—is simply a denial of the Strongs' allegations, both express and implied. All of the TDCA provisions upon which the Strongs rely apply to conduct in the course of "debt collection," as the statute defines that term. Tex. Fin. Code § 392.304(a) ("Except as otherwise provided by this section, *in debt collection* or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices . . . ."). More importantly, the Strongs explicitly allege in their First Amended Original Petition that Green Tree's actions "constitute debt collection as that term is defined by Chapter 392 of the Texas Finance Code." Doc. 1-8, First Am. Original Pet. ¶ 22. Thus, Green Tree's argument simply "rebut[s] the factual proposition of the plaintiff[s'] pleading," meaning that it is not an affirmative defense or avoidance that needed to be included in Green Tree's responsive pleading. *Mullins*, 564 F.3d at 411.

    b.  Green Tree Raised the Argument at a "Pragmatically Sufficient Time"

Even if the Court considered this argument as an affirmative defense or avoidance, Green Tree still raised it in a timely manner. Texas procedure generally prohibits a party from relying on any "avoidance or affirmative defense" that it did not expressly include in its responsive pleading.

Tex. R. Civ. P. 94; *Zorrilla*, 469 S.W.3d at 155. "In a diversity action such as this, substantive state law determines what constitutes an affirmative defense," but "the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (quoting *Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th Cir. Unit B 1981)). Although a party usually waives any affirmative defenses under Rule 8(c) that it does not include in its responsive pleading, a "technical failure to comply" "that does not result in unfair surprise . . . is not fatal." *Id.* (quoting *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)). Instead, a party satisfies its pleading obligation as long as it raises the defense "at a 'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'" *Id.* (alteration in original) (quoting *Lucas*, 807 F.2d at 418).

Green Tree may have raised this issue as early as its Answer, where it pleaded that it was not a "debt collector," as that term is defined in the TDCA. *See* Doc. 1-6, Def.'s Original Answer ¶ 14. Under the TDCA, a "debt collector" is simply "a person who directly or indirectly engages in debt collection." Tex. Fin. Code § 392.001(6). Therefore, denying that a party is a "debt collector" implicitly denies that it engaged in "debt collection." At the very latest, though, Green Tree asserted the argument in its MSJ. Doc. 74, Def.'s MSJ Br. ¶¶ 49–51. Other courts have found this to be a "pragmatically sufficient time," especially when, as here, the party opposing summary judgment has a full opportunity to address the defense in its response. *See Coker v. Dall. Cty. Jail*, No. 3:05-CV-0005, 2009 WL 1953038, at *14 (N.D. Tex. Feb. 25, 2009); *Briggs v. Dall. Area Rapid Transit*, No. Civ.A.3:02-CV-0015, 2003 WL 21804264, at *2 n.1 (N.D. Tex. Mar. 14, 2003); *Theunissen v. GSI Grp.*, 109 F. Supp. 2d 505, 509 (N.D. Miss. 2000). Furthermore, the Strongs have not identified any way in which Green Tree's purported failure to timely raise this argument prejudiced them.

Accordingly, the Court finds that Green Tree has satisfied its pleading obligation under Rule 8(c), and so may rely on this ground for summary judgment.

### ii. *Do Green Tree's actions qualify as "debt collection" under the TDCA?*

Moving to the merits of Green Tree's argument, the Court concludes that the evidence establishes that Green Tree's conduct is not actionable under Texas Finance Code § 392.304(a)(8) or (19).

### a.   Texas Finance Code § 392.304(a)(8)

Under section 392.304(a)(8), which prohibits "misrepresenting the character, extent, or amount of a consumer debt," Tex. Fin. Code § 392.304(a)(8), statements about a loan modification are not actionable where "the plaintiffs 'always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; (iii) and that they had defaulted.'" *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (quoting *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)); *see also Fields v. JP Morgan Chase Bank, N.A.*, 638 F. App'x 310, 313 (5th Cir. 2016) (unpublished).

Green Tree encouraged the Strongs to apply for a modification from October until December 19, 2012, when it informed them that they were ineligible. During that time, the Strongs were aware that they had a mortgage debt, and that they had defaulted.[18] Doc. 75-2, Def.'s App. 22–25, Notice of Default; Doc. 75-5, Def.'s App. 68–69, Notice of Default; Doc. 93-1, Pls.' App. 18, 19–20, 25–26,

---

[18] The Strongs appear to imply that they did not actually default on the loan. *See* Doc. 93-1, Pls.' App. 19, Strong Aff. ¶ 13 ("Modification would have cured any *alleged* default . . . ." (emphasis added)). This is undercut, however, by Steven's candid admission that they were not able to make their June 2012 payment. *Id.* at 18, Strong Aff. ¶ 7. Furthermore, the Strongs have introduced nothing to rebut Green Tree's evidence that they were in default during this time. Accordingly, there is no genuine dispute that the Strongs knew they were in default.

Strong Aff. ¶¶ 8, 15, 33, 35, 37. As to what they owed, the Strongs contend that Green Tree reported inconsistent amounts. *See* Doc. 93-1, Pls.' App. 26, Strong Aff. ¶ 36. Although it is true that Green Tree told the Strongs they owed a different amount each month, those differences are accounted for by adding in the monthly payments that the Strongs were missing. *See* Doc. 75-5, Def.'s App. 71, Resp. to QWR.

The Strongs also assert that Green Tree overstated how much they owed per month and in total. Doc. 93-1, Pls.' App. 22–23, 24–25, Strong Aff. ¶¶ 26, 30–31. But there is no evidence, beyond the conclusory statements in Steven's affidavit, that either the total amount or the monthly payment amount was incorrect. Steven attests that Green Tree charged them monthly payments of $2,539.92 and $2,667.55 in 2012, and then changed the monthly payment amount to $1,518.80 in 2013. *Id.* at 26, 30, Strong Aff. ¶¶ 34, 46. This bare fact is insufficient to show that Green Tree misrepresented the amount of the Strongs' debt, or even that it misrepresented the monthly payment amount. Rather, Steven's statements actually corroborate Green Tree's evidence about the 2012 payments, in that the amounts track the payment schedule Green Tree included in its response to the Strongs' QWR. *See* Doc. 75-5, Def.'s App. 71, Resp. to QWR. And the fact that Green Tree accepted payments of $1,518.80 after it told the Strongs to pay that amount does not mean that its 2012 statements—that it would only accept payments of $2,539.92 or $2,667.55 at that time—were false. All the evidence shows is that Green Tree (1) told the Strongs that they owed $2,539.92 per month from June to August 2012 and $2,667.55 per month from September until December 2012; (2) said it would not accept a payment of $1,518.80 during that time; (3) reported in February and May 2013 that the Strongs' monthly payment was $1,518.80; and (4) accepted a monthly payment of $1,518.80 in June 2013. Doc. 75-5, Def.'s App. 71, Resp. to QWR; Doc. 93-1, Pls.' App. 25–26, 30–31, Strong

Aff. ¶¶ 31, 34, 46, 48–49. Far from misrepresenting the amount of the Strongs' debt, Green Tree consistently adhered to the monthly payment amounts it communicated to them. The Court therefore concludes that the Strongs were aware of the amount that they owed while they were discussing a potential modification with Green Tree.

In short, during the time that the parties were discussing the availability of a modification, the Strongs knew that they owed a mortgage debt, what the amount of that debt was, and that they had defaulted. As a result, Green Tree's statements concerning the loan modifications are not actionable under Texas Finance Code § 392.304(a)(8).[19]

> b.     Texas Finance Code § 392.304(a)(19)

Section 392.304(a)(19) is the TDCA's "catch-all, or residual, provision." *Miller*, 726 F.3d at 724. Similar to the provision just discussed, however, the Fifth Circuit has repeatedly concluded that "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification and thus they do not state a claim under Section 392.304(a)(19)." *Fields*, 638 F. App'x at 314 (alteration in original) (quoting *Thompson*, 783 F.3d at 1026); *see also Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217 (5th Cir. 2015) (unpublished); *Singha v. BAC Home Loans Servicing, L.P.*, 564 F. App'x 65, 71 (5th Cir. 2014) (unpublished) (per curiam). Although it may be possible to pursue a claim for improper information-gathering under the guise of modification discussions, *see Pineda v. Nationstar Mortg., LLC*, No. 3:15-CV-1036, 2015 WL

---

[19] To the extent that the Strongs are trying to assert that Green Tree's statements about the amounts owed on their loan independently violate § 392.304(a)(8), this is a new theory of liability that does not appear in their First Original Amended Complaint, which is premised solely on Green Tree's representations about whether a modification might be available. The Strongs cannot effectively amend their complaint to change the theory of the case at this late stage. *See Mackey v. Jones*, No. Civ.A. 503CV006, 2004 WL 994688, at *1 n.2 (N.D. Tex. May 4, 2004). Accordingly, the Court did not consider these allegations in deciding the MSJ.

6438154, at \*3–4 (N.D. Tex. Sept. 29, 2015), the only evidence that that occurred here is Steven's conclusory statement that some of Green Tree's questions during the phone survey were not necessary to determine eligibility for a modification. *See* Doc. 93-2, Pls.' App. 39, Strong Aff. ¶ 66. This unsubstantiated *ipse dixit* is not enough to create a genuine issue of material fact. Therefore, the Strongs' claim under this section fails as well.

4.    The Summary Judgment Evidence Shows That Green Tree Did Not Misrepresent Its Services

Finally, the summary judgment evidence demonstrates that Green Tree did not "represent[] falsely the status or nature of the services rendered by the debt collector or the debt collector's business" under Texas Finance Code § 392.304(a)(14). The Strongs rely on three sets of alleged misrepresentations relating to the modification: first, that Green Tree misrepresented whether it possessed the Strongs' 2012 HAMP application from BOA; second, that Green Tree falsely represented that modification was available for the Strongs; and third, that Green Tree misrepresented that home equity loans like the Strongs' were constitutionally ineligible for modification in Texas.

The first alleged misrepresentation—that Green Tree did not possess the Strongs' 2012 HAMP application—is not a representation about the nature or status of its services. Whether it had the application or not, Green Tree was very clear that it "had its own modification process and options," and thus the Strongs were required to start a new application, notwithstanding any progress they might have made with BOA. Doc. 93-1, Pls.' App. 24, 26–27, Strong Aff. ¶¶ 29, 37; *see also* Doc. 75-5, Def.'s App. 71, Resp. to QWR ("In order to start a review for modification, you must complete a survey and send supporting documents."). In other words, the 2012 HAMP application

was simply irrelevant to Green Tree's modification procedure. At most, then, the evidence shows that Green Tree may have misrepresented whether it possessed information that it would not have used to provide its services anyway. As to the third alleged misrepresentation, there is no evidence that it was anything more than a good-faith disagreement about what the Texas constitution required with respect to home equity loans. The fact that Green Tree offered the Strongs a modification within three months of the *Sims* decision only bolsters this conclusion. *See* Doc. 75-7, Def.'s App. 94–98, Trial Modification.

The core of this claim is the Strongs' contention that Green Tree misrepresented whether a modification was available to them. *See* Doc. 1-8, First Am. Original Pet. ¶¶ 17–18; *see also* Doc. 93-1, Pls.' App. 24, Strong Aff. ¶ 29. They argue that Green Tree's statements—that modification might be an option—were false because, under Green Tree's internal policy, a home equity loan like the Strongs' was never eligible for modification. But this blurs the distinction between representing that a modification "might be" available and saying it "is" available. The former is simply a statement of possibility, which carries with it the implication that the modification might *not* be available. Therefore, the fact that a modification turns out to be unavailable is not necessarily inconsistent with a representation that it might be available. Now, it may be a misrepresentation for a debt collector to represent that a modification "might be" available when it knows full well that it is not. It seems that this is what the Strongs believe happened here. But there is simply nothing to support this interpretation of events. Instead, there is uncontroverted evidence that the employees who made these representations did not know that the Strongs were ineligible for modification until after Steven took the survey, at which point Green Tree stopped representing that a modification might be available. *See* Doc. 93-5, Pls.' App. 88, 90–92, Reyes Dep. 187:8–16, 189:3–16, 190:11–20.

Green Tree's written correspondence with the Strongs was no different. The letter where Green Tree supposedly offered a modification was a form letter, not tailored to the Strongs' particular circumstances, and it did not specifically mention modifications at all; instead, it informed the Strongs that they "may be eligible for Homeownership Counseling" if their home loan met certain criteria. *See id.* at 87, Reyes Dep. 186:16–25; *id.* at 84, Notification of Availability of Homeownership Counseling; *see also id.* at 83, Reyes Dep. 169:7–23 (discussing the Strongs' ineligibility for modification in reference to this letter). Nor did the November 16, 2012, Notice of Default represent that a modification was available. It only stated that completing a modification agreement with Green Tree was one possible way for the Strongs to cure their default. Doc. 75-5, Def.'s App. 68, Notice of Default.

Green Tree representatives did not misrepresent the availability of a modification in their phone conversations with Steven, either. During these calls, Steven was encouraged to apply for a modification through Green Tree's process (i.e., the phone survey), and was told "at least 10–15 times that modification was available through Green Tree." Doc. 93-1, Pls.' App. 24, Strong Aff. ¶ 29. Although the Strongs were ineligible to obtain a modification from Green Tree at the time of these conversations, there is no evidence that Green Tree did not offer modifications as a general matter. That is, the Strongs have not shown that modifications were *not* available through Green Tree. And, as stated above, Green Tree's representatives did not discover the Strongs' modification ineligibility until after the survey. Doc. 93-5, Pls.' App. 88, Reyes Dep. 187:8–16. Consequently, these statements were not misrepresentations.

The only specific alleged misrepresentation that the Strongs identify from these calls is an October 30, 2012, statement from a Green Tree employee that "a modification is the best option for

you." Doc. 93-1, Pls.' App. 24, Strong Aff. ¶ 29. The import of this statement, according to Steven, was that modification "would be[] actually and definitively available . . . and would be granted if [he] submitted to the survey." *Id.* It is difficult to evaluate the meaning of this statement, which is shorn from its context in the conversation. Although it can be read as a positive assertion that a modification was available, it could just as easily have been based on an implicit condition of eligibility. Either way, Steven's interpretation was not reasonable and is, therefore, insufficient as a basis to defeat summary judgment in light of subsequent communications with Green Tree. *See Richardson v. Deutsche Bank Nat'l Trust Co.*, No. 4:11-CV-0180, 2011 WL 5994317, at *7 (N.D. Tex. Nov. 28, 2011) (dismissing TDCA claim where, even assuming that debt collector had made prior oral misrepresentations, it subsequently sent a letter accurately describing prerequisites to participating in the HAMP). The Notice of Default Green Tree sent one month later in November 2012, for instance, made it clear that modification was not guaranteed. *See* Doc. 93-5, Pls.' App. 87–88, Reyes Dep. 186:9–187:5 (in discussing the Notice of Default's representation regarding modification, Steven conceded that "[i]t's not saying I'm going to get it," but rather only that "it's an option"); *see also id.* at 84, Notification of Availability of Homeownership Counseling (notifying the Strongs that they "*may* be eligible for Homeownership Counseling" if their home loan met certain conditions (emphasis added)). Thus, the evidence defeats this claim as well.

In sum, the Strongs cannot prevail on any of their claims.[20] Their communications with Green Tree regarding a potential modification do not qualify as "debt collection" under the TDCA, and they cannot show that Green Tree made any misrepresentations about its services upon which

---

[20] Because the Court has fully disposed of the Strongs' claims, it need not address Green Tree's other arguments for summary judgment.

they could have reasonably relied. Accordingly, Green Tree is entitled to summary judgment.

## IV.

## CONCLUSION

Based on the foregoing, the Court **DENIES** the Strongs' Motion to Strike (Doc. 106), and **GRANTS** Green Tree's Motion for Final Summary Judgment (Doc. 73).


SO ORDERED.

SIGNED: August 1, 2016


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE